IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JANICE BARROW,

    Plaintiff,

v.                                      Case No. 21-02569-JWB

KANSAS STATE UNIVERSITY,
et al.,

    Defendants.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendants' motions to dismiss (Docs. 10, 12.) The motions are fully briefed and ripe for review. (Docs. 11, 13, 14, 15, 17, 18.) For the reasons stated herein, Defendants' motions to dismiss are GRANTED.

**I.  Background**

The following factual allegations are taken from Plaintiff's state court Petition. (Doc. 1-3.) Defendants have also submitted some evidence that they claim is referenced in and central to the claims in Plaintiff's Petition. *See Alcarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (noting that a court may consider documents referred to in the complaint if they are central to plaintiff's claims and undisputed); *see also Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998) ("[C]ourts have broad discretion in determining whether or not to accept materials beyond the pleadings."). Accordingly, the court considers (1) the University's retirement benefits and procedure policies (Doc. 13-1), (2) Defendant Spears' December 3, 2019, email (Doc. 13-2), (3) the University's policy and procedure for reviewing complaints of discrimination (Doc. 13-3),

(4) University Handbook, Appendix G (Doc. 13-4), and (5) University Handbook, Appendix M (Doc. 13-5), which meet each of the elements above, in deciding this motion.

Plaintiff was a tenured faculty member working for Defendant Kansas State University (the "University") during the 2019-2020 academic year. On November 8, 2019, Plaintiff sent an email to her supervisor, Defendant Jacqueline Spears, stating:

> As guided by policy, I am letting you know that I plan to retire before the next academic year (2020-2021), which is a year earlier than originally planned. My sister's passing this year gave me pause and I revisited my priorities. A completed copy of the PER-37 NOTIFICATION OF RETIREMENT form for your signature is to be dispatched, also as guided.

(Doc. 1-3 at ¶ 25.) This email, Plaintiff alleges, was not intended "to be an official notification of retirement, nor did she understand it to be." (*Id*. at ¶ 26.) Under then-existing University policy, employees initiated the retirement procedure by notifying "their department/unit head of their impending retirement either by letter or through the completion of the 'Notification of Retirement' form PER-37." (Doc. 13-1 at 13.)

On December 3, 2019, Defendant Spears sent an email to Plaintiff with the subject line reading "Re: NOTIFICATION OF RETIREMENT," in which she stated:

> In response to your November 8, 2019 e-mail, I wanted to formally accept your plan to retire before the 2020-2021 academic year. I realize you are still working with TIAA and other advisors in determining the exact date of retirement. Once you have sorted that out, please let me know by e-mail the exact date you wish to retire so I can make arrangements accordingly.

(Doc. 13-2 at 2.) Plaintiff responded that she "was considering August 22, 2020, as a possible retirement date." (Doc. 1-3 at ¶ 36.)

"On April 9, 2020, Plaintiff received an email informing her that the annual retirement ceremony would not be occurring due to COVID-19." (*Id*. at ¶ 38.) In response, Plaintiff stated "that she had not officially confirmed a retirement date." (*Id*. at ¶ 39.) Then, on April 21, 2020,

2

Defendant Spears sent an email to Plaintiff stating that she was confused by Plaintiff's change of plans and asked Plaintiff to supply her retirement date. Plaintiff responded that she had not submitted the final request confirming a retirement date, and, for the first time, stated that she wanted to continue working.

Following this exchange, on May 19, 2020, Defendant Spears sent an email to Plaintiff explaining that, per her December email, she had already accepted Plaintiff's retirement and gave Plaintiff a tentative retirement date of August 8, 2020. (*Id*. at ¶ 46.) In response, Plaintiff stated "she had spoken with Human Resources previously, who had informed Plaintiff that she could choose her date of retirement, by providing 30 days' notice." (*Id*. at ¶ 47.) Plaintiff further elaborated "that her actual notice to retire would be on a PER-37" form and "that she was currently considering August 2021 as a possible retirement date." (*Id*. at ¶¶ 48-9.) Defendant Spears responded that Plaintiff was required to retire in August 2020, and she was "not interested in prolonging this exchange." (Doc. 1-3 at ¶ 50.) For the first time in her Petition, Plaintiff stated she "felt Defendant Spears' email was hostile due to Plaintiff's lack of desire to retire despite Plaintiff's age." (*Id*. at ¶ 54.) The University later adjusted Plaintiff's retirement date to August 22, 2020—the last day of the 2019-2020 academic year.

On August 12, 2020, prior to her retirement date, Plaintiff submitted a formal request to Defendant Charles Taber, the University's provost, that he initiate a grievance proceeding under Appendix G of the University Handbook, which provides a general grievance process for the University's faculty. (*Id*. at ¶ 81.) However, because Plaintiff alleged that she was being forced to retire against her will due to age discrimination, Defendant Taber forwarded the request to the Office of Institutional Equality ("OIE"). After being informed of this, "Plaintiff requested Defendant Taber also hear her complaints under [the University's] procedures regarding tenure

3

and termination." (*Id*. at ¶ 83.) In response, Defendant Taber declined to meet with Plaintiff because he had "been advised by General Counsel that the PPM 3010 process takes precedence over Appendix G process." (*Id*. at ¶ 86.) That is, under the University's PPM 3010 Non-Discrimination Policy, this was "the University's exclusive means of review[ing]" allegations of discrimination. (Doc. 13-3 at 4.) Plaintiff's retirement became effective August 22, 2020.

Following this, Plaintiff filed a Charge of Discrimination against the University with the Equal Employment Opportunity Commission ("EEOC") and the Kansas Human Rights Commission ("KHRC") alleging age discrimination. (Doc. 1-3 at ¶ 12.) On June 21, 2021, the KHRC informed Plaintiff that it "had made a no probable cause finding." (*Id*. at ¶ 13.) The EEOC then issued Plaintiff a Notice of Right to Sue.

On October 13, 2021, Plaintiff filed the present suit. The Petition asserts three claims against the University under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*.; three claims against the University under the Kansas Age Discrimination in Employment Act ("KADEA"), K.S.A. § 44-1111 *et seq*.; a procedural due process claim against Defendants Spears and Taber, in their individual capacities, under 42 U.S.C. § 1983 and the Fourteenth Amendment; and a claim for injunctive relief against Defendants Spears, Taber, and Richard Myers, in their official capacities, under *Ex Parte Young*, 209 U.S. 123 (1908).

Defendant Taber removed the case to this court on December 3, 2021, and the University consented to removal the same day. (Doc. 4.) In filing its consent to removal, the University stated that it "is not waiving, and expressly preserves, any immunity it has available, specifically including sovereign immunity from liability, from any claim asserted by Plaintiff, including but not limited" to her claims brought under the ADEA. (*Id*.)

**II.    Standard**

The court will grant a Rule 12(b)(6) motion to dismiss only when the factual allegations fail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the factual allegations need not be detailed, the claims must set forth entitlement to relief "through more than labels, conclusions and a formulaic recitation of the elements of a cause of action." *In re Motor Fuel Temperature Sales Practices Litig.*, 534 F. Supp. 2d 1214, 1216 (D. Kan. 2008). The allegations must contain facts sufficient to state a claim that is plausible, rather than merely conceivable. *Id*. "All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court construes any reasonable inferences from these facts in favor of the plaintiff. *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006).

**III.     Analysis**

After reviewing Plaintiff's Petition and drawing all reasonable inferences from the alleged facts in favor of Plaintiff, the court finds that the federal claims against the University are barred by sovereign immunity. The court further finds that Defendants Spears and Taber are entitled to qualified immunity. Lastly, because the court finds that Plaintiff's procedural due process rights were not violated by Defendants Spears, Taber, or Myers, she is not entitled to injunctive relief under *Ex Parte Young*. After dismissing all federal claims in this case, the court declines to extend jurisdiction over the remaining state law claims.

    **A.**    **The University's Sovereign Immunity**

The University argues that each of Plaintiff's ADEA claims against it are barred by sovereign immunity as it is a state university and, thus, an arm of the state. *See Shahmaleki v. Kansas State Univ.*, 147 F. Supp. 3d 1239, 1243 (D. Kan. 2015) (finding the University, "as a state

5

university, is an arm of the State of Kansas that is immune from suit without a clear consent by the state."); *see also Brennan v. Univ. of Kan.*, 451 F.2d 1287, 1290-91 (10th Cir. 1971) (holding that as an arm of the state, the University of Kansas was immune from suit via the Eleventh Amendment). In response, Plaintiff concedes that "only the state's consent to an ADEA claim would permit liability." (Doc. 14 at 4.) However, Plaintiff further argues that the State of Kansas waived its immunity from liability by passing the KADEA. (*Id*. at 4-5.) After reviewing pertinent case law, the court finds that the University is entitled to sovereign immunity from Plaintiff's ADEA claims.

Under the doctrine of sovereign immunity, the United States "is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Testan*, 424 U.S. 392, 399 (1976) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). States enjoy two discrete types of sovereign immunity: (1) Eleventh Amendment immunity from suit in federal court, and (2) a general sovereign immunity to damages in any court. *See Lujan v. Regents of Univ. of Calif.*, 69 F.3d 1511, 1522 (10th Cir. 1995) ("Eleventh Amendment immunity is … separate from sovereign immunity and can exist even where sovereign immunity does not." (citations omitted); *accord Harris v. Okla. Office of Juvenile Affairs ex rel. Cent. Okla. Juvenile Ctr.*, 519 F. App'x 978, 980 (10th Cir. 2013). However, this immunity is not absolute, as a state may waive its immunity by consenting to suit. *Estes v. Wyo. Dep't of Transp.*, 302 F.3d 1200, 1203 (10th Cir. 2002). Here, the parties agree that the University waived Eleventh Amendment immunity when it joined in the removal of this case to federal court; but the parties disagree on whether the University is immune to claims for damages based on traditional sovereign immunity.

"The test for determining whether a State has waived its immunity … is a stringent one[,]" and a "State's consent to suit must be unequivocally expressed." *Tyler v. U.S. Dep't of Educ. Rehab. Servs. Admin*., 904 F.3d 1167, 1186 (10th Cir. 2018) (citations and internal quotation marks omitted). "Waiver may not be implied." *Sassamon v. Texas*, 563 U.S. 277, 284 (2011). "In Kansas, the consent to suit or waiver of sovereign immunity must be based on State action, meaning legislative enactments expressing the will of the elected officials and cannot be based on acts of agents." *Purvis v. Williams*, 73 P.3d 740, 749 (Kan. 2003).

Here, Plaintiff does not argue that the Kansas legislature passed a statue expressly waiving its sovereign immunity from ADEA claims; rather, Plaintiff argues "the Kansas Supreme Court ruled years ago that by enacting state non-discrimination laws that made it liable for employment discrimination, the state of Kansas waived sovereign immunity from other non-discrimination laws." (Doc. 14 at 4) (citing *State ex rel Franklin v. City of Topeka*, 969 P.2d 852, 856-57 (Kan. 1998)). But Plaintiff is mistaken, as the *Franklin* court never made such a finding. As correctly summarized by the University, "*Franklin* held that the State's waiver of sovereign immunity from *state law claims* found in the Kansas Tort Claims Act ("KTCA") also waived immunity from parallel claims in *municipal* ordinances (i.e., ordinances passed by a subdivision of the *state*)." (Doc. 18 at 2.) Plaintiff's ADEA claims are federal—not state—claims. Because of this, *Franklin* is easily distinguishable from the present matter. Moreover, the KTCA plainly states that its waiver of sovereign immunity reaches only to claims brought "under the laws of this state." K.S.A. § 75-6103(a).

Turning to the KADEA, Plaintiff fails to identify anything that could constitute a legislative enactment expressly waiving the State's sovereign immunity from ADEA claims. Without an

7

express waiver, the University is entitled to sovereign immunity. Accordingly, Plaintiff's ADEA claims are dismissed.

### B. Defendants Spears and Taber are Entitled to Qualified Immunity

Next, Defendants Spears and Taber move for dismissal of Plaintiff's procedural due process claim against them, in their individual capacities, on the basis of qualified immunity. "Individual defendants named in a § 1983 action may raise a defense of qualified immunity." *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 460 (10th Cir. 2013). Qualified immunity "shields public officials ... from damages actions unless their conduct was unreasonable in light of clearly established law." *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008) (quotations omitted). When the defense of qualified immunity is asserted, a plaintiff must show: "(1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Cillo*, 739 F.3d at 460.

For a right to be clearly established, the contours of that right must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). A right is clearly established if there is a "Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts found the law to be as the plaintiff maintains." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) (quoting *Stearns v. Clarkson*, 615 F.3d 1278, 1282 (10th Cir. 2010)). General statements of the law are insufficient. *See White v. Pauly*, 137 S. Ct. 548, 552 (2017).

Here, Plaintiff provides the court with a single case—*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985). But Plaintiff simply cites *Loudermill* for the generalized statement of law that a tenured public employee is entitled to "notice of the charges against [her], an explanation of

the employer's evidence, and an opportunity to present [her] side of the story." (Doc. 15 at 7) (quoting *Loudermill*, 470 U.S. at 546). This general statement falls far short of demonstrating a clearly established right to the court. Moreover, the court concludes that *Loudermill* is too factually dissimilar to the present case for qualified immunity purposes. The plaintiff in *Loudermill* was a school security guard whose employment was terminated for cause for lying on his employment application about a prior felony conviction. *Loudermill*, 470 U.S. at 535. By contrast, Plaintiff here was a tenured professor at a university whose employment ended when the school accepted her previous statements about retirement by a certain time as having become binding on her. These circumstances are far too different to conclude that, based on *Loudermill*, every public official would know that the actions allegedly taken by these Defendants was unconstitutional. Because the generalized statements from *Loudermill* are all she has presented to this court, Plaintiff fails in meeting her burden to identify a case "from the Supreme Court or [the Tenth Circuit] finding a defendant liable under federal law in factually similar circumstances." *Cummings v. Dean*, 913 F.3d 1227, 1244 (10th Cir. 2019). Additionally, in the alternative, the court determines that Plaintiff fails to allege a constitutional violation, all as explained more fully in the next subsection of this order. Accordingly, Defendants Spears and Taber are entitled to qualified immunity as to Plaintiff's procedural due process claims asserted against them in their individual capacities.

      C.     *Ex Parte Young* **Doctrine**

For her final federal claim, Plaintiff contends Defendants Spears, Taber, and Myers denied her a constitutionally adequate pre-termination and post-termination process. Because of this, Plaintiff requests the court grant injunctive relief under the *Ex Parte Young* doctrine by ordering Defendants to fully reinstate her employment. *Ex Parte Young* allows certain suits against

individual state officers acting in their official capacity if the petition alleges an ongoing violation of federal law and the plaintiff seeks prospective relief. *Levy v. Ks. Dept. of Soc. and Rehab. Svcs.*, 798 F.3d 1164, 1169 (10th Cir. 2015).

On a claim for denial of procedural due process, the court engages in a two-step inquiry that first asks whether the Defendants' actions deprived Plaintiff of a constitutionally protected property interest. *M.A.K. Inv. Grp., LLC v. City of Glendale*, 897 F.3d 1303, 1308–09 (10th Cir. 2018). Second, the court considers whether Plaintiff was afforded the appropriate level of process. *Id.* As a tenured public employee, Plaintiff was "entitled to oral or written notice of the charges against [her], an explanation of the employer's evidence, and an opportunity to present [her] side of the story." *Loudermill*, 470 U.S. at 546.

Here, the court assumes Plaintiff has adequately alleged a property interest in her job with the University and proceeds to evaluate Plaintiff's claim at the second step. Defendants contend the University provided Plaintiff with "adequate, pre-deprivation process through PPM 3010, which allowed for adjudication of Plaintiff's claim that she did not intend to retire and was being forced to as an act of age discrimination." (Doc. 13 at 9.) The court agrees. Plaintiff does not deny that she received notice that her planned retirement was being effectuated as early as April 2020, or that she was entitled to a hearing, through PPM 3010, at which she could challenge this decision. Instead, Plaintiff makes a strained argument that she was denied sufficient process because "even if there was no discrimination, [] she had been deprived of her tenure rights. Yet Defendants were able to use the mechanism to prevent that claim from ever being adjudicated." (Doc. 15 at 6.) This argument is rooted in Plaintiff's misguided belief that Defendant Taber completely deprived her of procedural due process by forwarding Plaintiff's formal complaint to

OIE for resolution under PPM 3010—not Appendix G.  (Doc. 1-3 at ¶¶ 81-87.)  Replying to this, Defendants state:

> But Plaintiff ignores the dispositive point that she was claiming her continued employment and by extension, her tenure rights, were denied because of age discrimination—that is, her complaint was that her email correspondence with her supervisor was being mischaracterized as a voluntary retirement due to a subjective motivation to discriminate against her based on age.  Thus, Plaintiff makes a distinction without a difference.  PPM 3010 provided her with a constitutionally adequate process to adjudicate her concern that her employment was being terminated, and her tenure rights violated.

(*Id*.)  The court agrees and finds that the minimum constitutional requirements for procedural due process were satisfied in the present matter based on the pre-termination process afforded under PPM 3010.

However, even assuming Plaintiff is correct that the age discrimination claim process under PPM 3010 somehow precludes her ability to challenge whether she had actually committed herself to retirement (a claim that she argues should have been reviewed separately under the procedures of Appendix G), due process would still be satisfied if an adequate post-termination process was available.  *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (holding that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation [sic] remedy for the loss is available.").  These Defendants assert that the opportunity for post-termination judicial review provided under the Kansas Judicial Review Act ("KJRA"), K.S.A. § 77-601 *et seq*., satisfies due process under these circumstances and forecloses Plaintiff's procedural due process claim.  (Doc. 13 at 16-17.)  The court agrees.

Under the KJRA, qualifying[1] plaintiffs are "entitled to judicial review of final agency action, whether or not the person has sought judicial review of any related nonfinal agency action." K.S.A. § 77-607(a); *Gaskill v. Fort Hays State Univ.*, 70 P.3d 693, 694-95 (Kan. Ct. App. 2003) (finding that the KJRA is the appropriate remedy for a tenured faculty member claiming she was wrongfully terminated by a state university). Had Plaintiff brought a KJRA claim, she could have had a state court review her claims that Defendants denied her the necessary process to which she was entitled. *See generally* K.S.A. § 77-601 *et seq*. Moreover, had Plaintiff prevailed in her KJRA proceeding, the state court would have had the authority to award her damages and reinstate her tenured teaching position. *See* K.S.A. § 77-622. These possible remedies are precisely what Plaintiff seeks in the present matter, and, because of this, the KJRA was an adequate post-deprivation remedy, the existence of which dooms her procedural due process claim. Accordingly, Plaintiff's claim for injunctive relief is denied.

D.     **State Law Claims**

Because the court dismisses Plaintiff's federal claims, the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Any claims remaining in Plaintiff's Petition arise under state law. Although the court could exercise supplemental jurisdiction over Plaintiff's state law claims, the court declines to do so. *See Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.") (quoting *Smith v. City of Enid ex rel Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998)). There are no compelling circumstances that justify this court retaining jurisdiction. In addition, this case is in the early stages as a scheduling order has not been entered and no formal discovery

---

[1] To qualify, a plaintiff must: have standing, exhaust their administrative remedies, and timely file a petition for judicial review. *See* K.S.A. § 77-607(a).

has been exchanged. Accordingly, the court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

## IV. Conclusion

Defendants' motions to dismiss (Docs. 10, 12) are GRANTED. Plaintiff's federal claims are hereby DISMISSED with prejudice for the reasons stated above. The court declines to exercise supplemental jurisdiction over the remaining state law claims and dismisses them without prejudice. The clerk is directed to enter judgment accordingly.

IT IS SO ORDERED this 9th day of June, 2022.

_s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE